## CHARLIE MOORE v. STATE.

No. A-7416. Opinion Filed June 28, 1930.
(289 Pac. 788.)

J. W. Dixon, for plaintiff in error.

The Attorney General and Smith C. Matson, Asst. Atty. Gen., for the State.

CHAPPELL, J. The plaintiff in error, hereinafter called defendant, was convicted in the district court of Love county of the crime of manslaughter in the first degree, and his punishment fixed at five years' imprisonment in the state penitentiary.

The homicide occurred on Sunday afternoon when defendant and deceased, Jack Loving, who was a second cousin of defendant, were present at a ball game. The evidence of the state is that defendant assaulted deceased

with his fists and with such force as to break the neck of deceased causing almost instant death; that defendant and deceased met near the ball grounds and immediately started to fight; that in a short time deceased asked defendant's brother to make defendant stop striking him and when this was not done, turned and started to go rapidly away from defendant. Defendant followed behind deceased about fifty yards striking him with his fists and kicking him until deceased collapsed and fell; that defendant raised deceased to a sitting position and said: "Get up you son-of-a-bitch, you ain't got anything the matter with you"; that deceased fell on his face again as soon as released by defendant; that defendant again lifted deceased to a sitting posture and that deceased immediately fell again when released by defendant and died immediately thereafter; that defendant lighted a cigarette and sat within five feet of deceased smoking for a short time and then went about 150 yards away and pitched horse-shoes until the sheriff came and arrested him; that deceased weighed about 145 pounds and the defendant about 185 pounds.

The defense interposed was self-defense, the defendant claiming the deceased struck the first blow and started the altercation. Defendant in his brief argues four propositions, but cites no authorities in support of any of them. Defendant first contends that the verdict is not supported by the evidence and the punishment is excessive. It is contended that there is no evidence to show that the defendant intended to kill the deceased; that the death resulted from a fist fight and that no dangerous weapon was used. It is not necessary, in a conviction of manslaughter in the first degree as defined by section 1740, C. O. S. 1921, that the defendant should have intended that death should result. The evidence in the case shows

that the defendant intentionally attacked the deceased with his fists and that as deceased fled defendant continued to follow him and kicked, struck, and beat him, and finally struck the defendant with such force as to break his neck. The conduct of the defendant before and during the fight and his conduct afterward indicates that he was a big bully looking for trouble and taking a much smaller man than himself, beat him to death and then, with utter indifference, lighted a cigarette and pitched horse-shoes until the sheriff came to arrest him. The evidence overwhelmingly supports the verdict, and the punishment given the defendant is inadequate. Defendant and his counsel should congratulate themselves that the jury were merciful and fixed the punishment at five years rather than that which the jury would have been justified in giving him under the facts and circumstances in the case.

The defendant next contends that the trial jury was illegally drawn and illegally handled in such a way that the defendant was prevented from having that fair trial guaranteed him under the Constitution and laws of this state. This question was raised by the defendant at the conclusion of the state's evidence by an oral motion to quash the jury panel. Defendant in his brief points out no error in the drawing or handling of the jury, but contents himself with the bare statement that the jury was illegally drawn and illegally handled. This question was not raised as required by sections 2658-2660, C. O. S. 1921. Section 3526, C. O. S. 1921, in part provides:

" * * * A substantial compliance with the provisions of this chapter shall be sufficient to prevent the setting aside of any verdict rendered by a jury chosen hereunder, unless the irregularity in drawing and summoning or impaneling the same resulted in depriving a party litigant of some substantial right: Provided, however, that such

irregularity must be specifically presented to the court at or before the time the jury is sworn to try the cause."

The defendant waived any question as to the improper or illegal manner of impaneling the jury in this case by failing to raise the question in the manner and within the time prescribed by the statute. It was not error therefore for the court to overrule defendant's motion to quash the panel.

The defendant next contends that the following remarks of the trial court in the presence of the jury prevented the defendant from receiving a fair and impartial trial:

"By the Court: Where is this testimony competent, any contention this man did not have a right to go to the ball game? By Mr. Dixon (of counsel for defendant): We object to the remarks of the court in the presence of the jury, this is impeaching testimony strictly. It is to impeach the witness Loving. The father said he talked with his son immediately prior to this time."

A careful examination of the whole record reveals that defendant was attempting to get into the record a statement made by the father, over the dead body of the deceased, his son: "That if he had listened to his father and not gone to the ball game on Sunday this would not have happened." In the first place this was not proper impeaching evidence, and in the second place the court merely inquired if there was any contention that deceased did not have a right to go to the ball game. The ruling of the trial court upon the competency of this evidence was correct, and the remark made by the trial court could not have prejudiced the defendant in any of his rights.

Defendant next contends that the court erred in instructing the jury on murder. The information charged

110

murder, the trial court instructed on murder, manslaughter in the first degree, manslaughter in the second degree, excusable homicide and justifiable homicide. Under section 2722, C. O. S. 1921, it is provided that in charging the jury the court must state to them all matters of law which it thinks necessary for their information in giving their verdict. This court has repeatedly held that in a prosecution for murder the court should submit the case to the jury for consideration upon every degree of homicide which the evidence in any reasonable view suggests, and if the evidence tends to prove different degrees, the law of each degree should be submitted to the jury. Atchison v. State, 3 Okla. Cr. 295, 105 Pac. 387; Kent v. State, 8 Okla. Cr. 188, 126 Pac. 1040; James v. State, 14 Okla. Cr. 204, 169 Pac. 1127.

Where the defendant is charged with and tried for murder and is convicted of manslaughter, objections urged under instructions given upon the question of murder will not be sustained upon appeal, in the absence of a showing that the defendant was injured thereby. In view of the fact that the defendant was convicted of manslaughter and that the evidence sustains such conviction, it is apparent from the record that he could not have been prejudiced by the court's instructions relative to murder.

None of the errors complained of being sufficiently prejudicial to require this court to reverse this case, and the evidence being sufficient to support the verdict of the jury, the cause is affirmed.

EDWARDS, P. J., and DAVENPORT, J., concur.